May it please the court, I'm Jack Schweigert on behalf of the appellants Cindy Long and the estate of Dustin Long. Analyzing the facts of this case I think it becomes easier if you look at the excerpt of record. I would draw your attention to page 40 because in page 40 we have a diagram of the scene. Sometimes you know hearing who's saying what without a point of reference is a difficult thing to follow. When you look at this diagram the point of reference is this diagram was used in part by Miss Long's expert. He's a reconstructionist named Mr. Calhoun and what Mr. Calhoun did was he went out to that scene on several occasions, both at nighttime and in the daytime, filmed, took measurements in an effort to reconstruct what must have happened on the night in question. And more specifically your honors, his focus was to identify what would and what would not be seen from the various vantage points where the police would be stationed and the locations of where the police would be stationed was locked in by way of deposition testimony from the various police officers who were at the scene on June 3rd 2001. Well the issue you've got to deal with it seems to me is whether Officer Sterling has qualified immunity to shoot at the time he did knowing what he knew and could see. What what can you shed on his perception which is what we focus on. Absolutely. There's a question as to the credibility of Officer Sterling. He will tell you that at the time he takes the shot. Well now in terms of credibility the jury's already decided that right? The jury will decide that. This is a summary judgment. Oh I'm sorry excuse me. I'm sorry. You're absolutely right. My whole focus will be to show you that there are major factual disputes. But we don't judge credibility on summary judgment. We accept the statement that's true. That's one of the rules of summary judgment right? Take statements as true by the by the non-moving party. We take everybody's statements as true and then we see if that gives rise to a dispute. Right? Accepting both sides is true. And that's like I think there was a most recent case that came down from the Supreme Court and then a reaffirmation by the Ninth Circuit that says unless the statements are just totally so unbelievable that they could not be taken as true. And that was a case where I think a police car is chasing a fleeing suspect and there's a video camera and the fleeing suspect is making statements about what what he says is true versus what the camera obviously shows to be disparity between his version and the facts. But I appreciate your your your contention there counsel but as federal scandal suggests that what we're really dealing with here is is a legal standard and help me if you will please with with with this I this officer the question is whether he acted in an objectively reasonable fashion. That's right. Your Mr. Long apparently had shot somebody, two people, hit them. Correct. He was agitated, he was shouting threats at the police even though he may have wanted to surrender he didn't. Apparently officers Marini and Cannella were located in an area near where Long was pacing with a .22 caliber rifle. Sterling heard over the radio that Long had fired a shot at his fellow officers. Under the circumstances how do you conclude that it was not objectively reasonable having just heard on the radio that he'd shot to to try to take him out with that rifle? If you take a look at the excerpt page 40 you'll see where all the players are and you'll see that officers Marini and officers Cannella would be on the on the right side as you're looking at the page of what's called a bamboo thicket. So they're over there. Now there's disparity as to what they say. They say at the time that officer Sterling hears them radio report we're being fired upon they say that that point in time they heard my client come out he's saying vulgarities to them he's saying I told you whatever to stay out of here they say he chambers around which would not occur because there's allegedly a shot taken a half an hour earlier which would have already loaded that weapon then they say once they heard that chambering of the round and there's some disparity between those two officers that they turn and run and jump into a ditch and as they're jumping into that ditch they say they heard Long fire at them at which time they radio one of officer Marini radios we're being fired upon and Sterling takes them out. The only problem with that is officers Marini and officers Cannella were already in that ditch and I draw your attention to the CADS report where you'll see they were in that ditch for a totally different reason and they were in that ditch already four minutes before this incident where they're allegedly hearing the chambering of the round turning and jumping into the ditch hearing Long allegedly fire at them as they're jumping into the ditch. I appreciate that you're questioning the credibility of the testimony of the officers but the key here is what Sterling understood it was what was objectively reasonable to him. That's right. Even if the other two officers were just lying through their teeth the question is what did Sterling understand what was what was he dealing with? That's why I would draw your honor to this this excerpt page 40 because you'll see Sterling is going to be at the bottom of the diagram he's right he's in the position called B my client is up above that position down the driveway he's in position H so we have and officer Dahlbeck in B and we have Long in position H so Sterling regardless of what he hears over his radio this has got a clear view of Mr. Long he's not only got a clear view of Mr. Long he's got a clear view of 15 feet on both sides of Mr. Long so he can fully see what Mr. Long is doing and he does not describe Mr. Long as calling threats. Well how do you interpret the record as to what did he see? Sterling I mean. Well he says he saw off he said he saw my client your honor lift a rifle to his shoulder length and take a shot he says he heard the shot and he says he saw the rifle jerk. Now are you saying we shouldn't believe that? That's correct. All right. One reason there was never a case. What why don't you do this why don't you just give us what you believe the undisputed facts are that we should base our decision on. The undisputed facts are that there was no shell casing the undisputed facts are that. Well is it an undisputed fact that Sterling saw Long holding a rifle? That's an undisputed fact. There's a question as to whether Long even had a rifle. What do you mean a question? Because. Well what contradicts Sterling's statement that he saw Long holding a rifle? The fact that an earlier incident where there's a guy named Mr. Kurt Umano. Kurt Umano had been over at that house prior to the police coming and after Mr. Long had shot that rifle at those people earlier on in the evening a couple hours earlier on the evening Mr. Umano hid the rifle so there was a question as to whether Long even had a rifle at four o'clock in the morning and the question is brought about because to have a rifle he would have had to have found what Chauncey or what what Kurt Umano had hid and he hid it in the garage so there's there's a question of fact on whether he even had. I don't think that necessarily you know makes Sterling's statement disputed because Umano said several hours earlier he hid the rifle right? Well two hours earlier that's right. It doesn't it doesn't dispute the statement I don't think necessarily that he saw him with the rifle with that rifle. Well I guess what that raises. See I think what you're doing is I mean you're making these I suppose it's possible but I mean the statement you just made for us well he hid the rifle two hours before so obviously it would be impossible for anybody else for him to have a rifle two hours later. I don't think that's necessary too is it? No it's not. All right then it's not disputed is it? Sterling says I saw him with a rifle and it's an undisputed fact so I think you have to accept that on summary judgment. For purposes of argument I think you're right because the only point the only point of it is is what Sterling says he having a rifle as you know from cases like Harris the Ruby Ridge case having a lot rifle having shot people earlier in the day doesn't give you the right to kill an individual or to resort to deadly force. It's only when that individual is pointing that rifle at somebody and somehow posing an immediate threat that an officer has the right to take them out. But let's let's say for a moment that whether or not the other two officers that allegedly went into the is there anything in the record the record that suggests that Sterling did not hear a report from the radio saying that they had been fired upon? No there's not. So for purposes of our analysis Sterling saw along with the rifle he heard on the radio that the other two officers had been fired upon under those Why wouldn't he be in a reasonably objectively in a reasonably objective fashion justified in shooting Long? Well first of all he sees Long. Right. And so he sees what Long's doing. Right. So for I don't care what a thousand other other officers might say care to say that would not be reasonably trustworthy information because Sterling is looking at it with his own two eyes. But he has a hearing he's hearing that they fired upon him and I understand it he testified that he saw him take the rifle up into a shooting position and it appeared to backfire which would suggest he had shot the rifle right? He says he even heard the bullet. Okay so under the circumstances where's the lack of reasonable objectivity on Sterling's part? If if what Sterling says he saw if what he says he saw really took place there would be a shell case. There would have been a sound of the sound of the bullet going off heard by many many other people. No private people heard that sound. None. No no shell casing was found from that phantom shot and our expert says there would have been a shell casing and it would have been right in the area where he was shot. No shell casing was found despite they got down on their hands and knees and they even used in part a metal detector to try to find what kind of rifle this is a 22 rifle right? That's the kind long here. Okay and and I've shot lots of 22s over the year and there are plenty of 22s that you shoot and there's no casing that goes out until after you pull the hammer back or the bolt back and it goes out then why couldn't he have shot the 22 not ejected the shell and it still would be in the rifle. Because it's automatic. Okay so and the kind of rifle that he had was an automatically kicked it out. Right and our expert Dr. Mr. Calhoun specifically says that our expert was actually able to take the weapon the very weapon that Mr. Long had and take it out to a firing range. There was a certain stipulation with the court we were able to go to the police station get the weapon take it out and test fire and do all that had to be done. Okay well let's let's let's continue with your analysis then let's assume for a moment that if he had shot there would have been a casing. 22s are not very loud they're really fairly quiet. Why why are we to assume that Sterling would have to be a liar if he saw what he saw and didn't hear anything? Well he says he heard it. Okay. So he heard it and you can't find the casing you mean that by definition you want us to assume that he is lying. Well there's more to it than that. Okay. He's if what he says he saw he truly did see you would have had a shell casing and you would have had many other people say we heard that shell as well. His partner doesn't see any of this particular very incident where there's allegedly the raising of the rifle the shooting of the went out to say is his partner is saying you know I when my client goes across the driveway over to where these Marini and Canela officers are at this officer Dahlbeck is saying they go out he goes out of our view our expert goes to that very site and says that's impossible from the spot that they were on from the garage roof across the street down the driveway being one foot apart that the inability to see what officer Sterling would be is an impossibility what Sterling saw Dahlbeck saw those are two snipers and the way it works is Sterling would be on his gun and officer Dahlbeck would be the spotter so the spotter is now arguing that he somehow can no longer see the suspect from bushes that don't exist there for purposes of summary judgment taking the facts and the light most favorable to my client not seeing something that you in fact should be able to see is something from which I believe a negative inference can be drawn as you just don't want to see it and that's the same kind of attitude that was shown by officer Burns who if you take a look at this diagram on page 40 is over on the backside of the property he's he's at position number E he should be able to see the entire incident and he doesn't see anything until after long as shot and is laying there groaning on the ground but he should be able to see as our experts said having gone out there both day and night under all conditions he should have been able to see long over in the position of H he could in fact see the hedge from the position over here at position E so there's more than just officer Sterling saying what he saw the fact that if he saw what he saw there had to have been a shell casing people had to have heard of this is like 451 in the morning you know so what troubles me about your analysis is that it requires us to somehow or other doubt not to say that the testimony is false but something to doubt these statements and we are not in front of a jury we have to simply take the statements as they are doing not at least at this stage well I think I would question that your honor and the case I would draw your attention to is state Scott versus Henry to me that's a real on-point case because in Scott versus Hendrick it specifically says that deadly force cases pose particularly difficult problems under this regimen because the and what it goes on to say is that the court must ensure that the officers not taken advantage of the situation knowing that there's nobody else except him to identify what's going on and they specifically say that what you must do the court may not simply take what they say as self-serving documents self-serving statements but that they actually have to look to see if the officer story is internally consistent and also consistent with the rest of the assessment internally consistent the answer no how do I say no he makes like four different accountings of this shooting incident the first one is when he does his immediate follow-up report on June the 7th 2001 in that report he's actually got my client walking away from the scene where he's allegedly just taken that shot so no longer is there an immediate threat he's walking away from that scene in fact my expert is able to quantify having gone out there to exactly pinpoint where mr. long would have been shot but at the time mr. long is shot he is a hundred and twenty degrees away from the bushes where he's alleged to have taken the shot and 30 degrees from perpendicular of officers Dalbeck and Dalbeck and Sterling down the driveway so that he's basically going away from the scene the question becomes is there an immediate threat to any of the officers at the time officer sterling takes his shot if he's 30 degrees away from sterling and he's a hundred and twenty degrees away from the bushes he's going away from the scene and that most recent Supreme Court case that came down in 2007 that talks in terms of an officer shooting someone as they're fleeing away or all of the cases once the danger the immediate danger has passed unless you have reason to believe that he's going to go on and some kind of shooting spree thereafter you no longer have that that immediate threat warranting the use of deadly force keeping in mind this kid is at his home keeping in mind that he it's surrounded by SWAT officers there's no allegation that he's fleeing the scene the only question is is he taking a shot at two officers who say they're jumping in a ditch to avoid being hit by long shot but have been in that ditch for already four minutes by the way the accuracy of that recording it's called a cad's report on this batiste who we did depose she says it's accurate so like and the way it works is you take one line reporters taking everything down on this alert to radio station and and as one line goes through then she hits an enter button so it's off by as much as just a few seconds so when you take a look at the cad's report and this is worth noting reading and canella just so you have a point of reference to your time is expired so just okay I think we all know about the kids report and we certainly have your understanding about the gaps okay thank you thank you very much you are very welcome now we'll hear from the city and county thank you your honors my name is Brian he and I represent the athlete sitting Connie upon a little and officer Patrick Sterling rather than people my condolences to your fellow council apparently has lost his voice I'm getting there soon but I hope to happen to laugh very we finish our city thank you your honor I believe that the court Berkeley based upon the questions to mr. Schweiger quickly analyze the standard is whether officer sterling acted in an objectively reasonable fashion and in that we in that regard I can I just interrupt you for one second what is the standard for purposes of reviewing a summary judgment in this type of case we could take this all statements of all parties as being correct are we to favor one side or the other I believe it's a de novo review so you would take all statements as being correct and in that regard if you look at the the reply brief the appellant raises several issues which he long was armed in and of itself doesn't allow use of deadly force he claims that long had previously shot two people that was much earlier in the evening and this dispute about officers Marini and Canela the timing of their jumping into the ditch we would submit that it's it's not any one particular factor that the court has to look at it from the perspective of a reasonable officer at the scene under the circumstances and without the benefit of 2020 hindsight well counsel I think you need to respond to mr. Schweiger it's analysis he takes he first of all starts with the the map and then he asks us to interpret what these not have been able to be seen from different places on the map I think you need to respond to that in terms of the key issue is what start with officer Sterling saw and heard and in that regard but what officer Sterling said was that he saw he saw along with armed with the rifle facing in the direction where officers Marine and Canela were and he heard that it's undisputed that he heard over the radio the report that they were being shot shot at where was the rifle found after this incident was it anywhere near long or was it back in the garage it was found under or either under long or in his immediate vicinity all right so that's the fact that can be taken into account in terms of analyzing what actually happened or at least what was what what officer Sterling's says that the rifle was raised and was being aimed at somebody yes and if it turns out the rifle was found right next to him that's something would might lead one to believe that that probably happened yes that would be correct does the record show whether the rifle had been fired in the time framework that would corroborate or corroborate what mr. what Sterling said if in terms of the report of other officers and other officers not only marine and Caneli but other officers who heard reported hearing a shot before Sterling shot no I'm saying that but what I'm asking is the rifle we're talking about the rifle now the rifle was there presumably of some kind of ballistic report was done some kind of review did was any report done that shows up in the record that rifle was fired and whether or whether a shell casing was still in the gun the rifle was fired earlier in the evening but but not but not fired later there was no evidence one way or the other that there was or wasn't that's confusing tell me what evidence you're looking at in the record about what when the rifle was fired you said it was fired earlier in the evening that's based upon the fact that two people were shot or examination of the rifle indicated that well actually there were other shell casings found toward the front of the house okay those shots were fired and as well there was a casing found near the kitchen area which was assumed that he shot in the air okay but there were no shell casings found in the area where his body was ultimately found okay and Mr. Swigert has suggested that basically it just doesn't add up what Sterling is saying does not add up because of no casings there the spotter said he didn't hear or see what Sterling said he said he saw or and heard the two other officers were in the ditch four minutes earlier you say there's no what what inferences are we entitled to draw from that if any I think when you look at it from the perspective of officer Sterling what did he see what did he hear what he saw was long holding the rifle in the direction facing the direction of where the officers were so and then he heard the report he shot at that but he also said if I understood correctly and as I recall from my notes on this the he also claimed that he heard a shot right that's correct so if the gun if the gun did not indicate that had been discharged then officer Sterling would have to be lying I suppose best way to put it right you can't have it both ways right for person of the motion yes however it doesn't it for the qualified immunity analysis it wouldn't matter whether or not the shot was actually taken because what officer Sterling perceived when he saw long holding the rifle and the report that they were being fired upon that there was an immediate threat to those officers and that's what caused him to take the shot well I hear that's for issues of qualified immunity but in terms of whether or not a constitutional violation took place that's another issue isn't it yes that's correct but in terms of whether or not the shot it doesn't matter for those purposes were not a shot was actually fired because it's based upon what officer Sterling perceived and whether that was and in that regard we would we would dispute what counsel's argument about the expert going out and taking a look at the scene and after the fact that day and night because again you have to view view it from the perspective of a 20-20 vision of hindsight that the standard under Scott versus Henry which was was cited earlier by swaggered is really what whether long believed that a rather sterling believe that long posed an immediate threat to his fellow is it your contention that if we draw an inference that he was lying and his sterling was lying about having seen long shoot the gun that he was holding does that change our analysis of whether or not he felt his officers were in danger no because what's undisputed is that the radio transmission from that then goes back to the other point that is made in the record that these folks were in the ditch four minutes before and that that also there is some improbability in that account as well but whether or not they were in the ditch earlier or not that's not a material fact in terms of what their report was over the radio they were being shot so let's if the rifle was not which apparently is the case and so sterling could not have seen it shot it could not have heard it shot the two officers were in the ditch four minutes earlier if they radioed them and said we've been shot at and yet sterling can see long and long is not shooting anybody what are we to make of that well under the the CADS which striker to talked about the officer sterling shot was taken almost either simultaneously or meet immediately after the report by officers Marini and Canella that they were being shot so you're arguing that it's the exigency even though that in the cold analysis of looking back at this point it doesn't make a lot of sense in terms of its details here he is guys got a gun he shot two people before he's screaming yelling obscenities that everybody we're supposed to look at it for the terms of this pressure cooker he gets this report he's not obligated to sit there and analyze whether this makes any sense he just shoots him is that right well it's not that he doesn't analyze it but you know he's looking at it from all with all of those facts and to react to second reaction he sees the immediate threat and he responds anything further counsel I have nothing thank you the case just argued will be submitted for decision and we will hear argument in BV
judges: O'scannlain, Tashima, Smith